# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHANNON CURRY,                      :      No. 3:24cv1026
          Plaintiff            :
                              :      (Judge Munley)
                              :
          v.                     :
                              :
AGENT KELLY PORAY, and JOHN         :
DOE SUPERVISORS 1-20,               :
          Defendants           :

## MEMORANDUM

Before the court is a motion to dismiss filed by Defendant Agent Kelly Poray in this action filed pursuant to 42 U.S.C. § 1983 ("Section 1983"). Having been fully briefed, the motion is ripe for disposition.

## Background

As alleged in Plaintiff Shannon Curry's complaint, Defendant Poray is a narcotics agent with the Commonwealth of Pennsylvania Office of Attorney General, Bureau of Narcotics Investigations.[1] (Doc. 1, Compl. ¶ 5). In March 2022, the Plains Township Police Department contacted Defendant Poray

---

[1] These brief background facts are derived from plaintiff's complaint and the exhibits attached thereto. At this stage of the proceedings, the court must accept all factual allegations in the amended complaint as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

regarding an alleged theft of a controlled substance at the Timber Ridge Health Center ("Timber Ridge"), a nursing home. Id. ¶¶ 10–11.

Plaintiff worked at Timber Ridge as a licensed practical nurse ("LPN"). (Id. ¶ 11). Plaintiff alleges that Defendant Poray conducted a "less than thorough investigation into the 'theft'[.]" Id. ¶ 11. That investigation caused Poray to file a criminal complaint and affidavit of probable cause charging the plaintiff with theft of patient's oxycodone. Id. ¶¶ 11–13. Specifically, Poray's criminal complaint accused plaintiff of violating a provision of Pennsylvania's Controlled Substance, Drug, Device, and Cosmetic Act, which prohibits "[t]he acquisition or obtaining of possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge[,]" 35 PA. STAT. § 780-113(a)(12). (Doc. 1-1, Compl. Ex. A). Because oxycodone is a Schedule II narcotic, the offense was graded as a felony. 35 PA. STAT. § 780-113(f)(1).

Authorities arrested the plaintiff on June 23, 2022, and held her at the Luzerne County Prison. (Doc. 1, Compl. ¶ 14). She spent approximately 12 hours at the jail before her husband posted bail. Id. ¶ 15. On August 23, 2022, however, after a preliminary hearing, a magisterial district court judge granted the plaintiff's motion to dismiss all charges due to the Commonwealth's failure to establish a *prima facie* case. Id. ¶ 17.

2

Plaintiff's complaint names Defendant Poray and twenty John Doe supervisors as defendants. The complaint asserts eight (8) separate counts as follows:

> **Count I** – Section 1983 malicious prosecution claims against Defendant Poray and the Doe supervisors;
>
> **Count II** – Section 1983 failure to intervene claims against the Doe supervisors;
>
> **Count III** - Section 1983 supervisory liability claims against the Doe supervisors;
>
> **Count IV** – state law claims against Defendant Poray for false arrest and false imprisonment
>
> **Count V** – a state law claim against Defendant Poray for malicious prosecution;
>
> **Count VI** – claims against Defendant Poray and the Doe supervisors for state constitutional violations;
>
> **Count VII** - claims against Defendant Poray and the Doe supervisors for intentional infliction of emotional distress ("IIED"); and
>
> **Count VIII** – a count entitled "Other," which seeks declaratory and injunctive relief, attorneys' fees, and punitive damages.

Id. ¶¶ 27–79.

Defendant Poray responded to the plaintiff's complaint with a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure

12(b)(6). (Doc. 8). The parties subsequently filed briefs in support of their respective positions, which brings this case to its present posture.

## Jurisdiction

Based on the alleged violations of Section 1983, this court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

## Legal Standard

Defendant Poray filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.

To survive a motion to dismiss, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P.

4

8(a)(2)). That means, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

On a motion to dismiss for failure to state a claim, district courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips, 515 F.3d at 233 (citations omitted).

**Analysis**

Defendant Poray moves to dismiss the plaintiff's complaint and seeks dismissal of this action with prejudice. [2] Poray argues that the claims asserted within Count I (Section 1983 – malicious prosecution); Count IV (state law – false

---

[2] Although not specifically stated, the court can also imply from moving defendant's arguments that if plaintiff's claims against Defendant Poray are subject to dismissal, then the claims asserted against her John Doe supervisors are also subject to dismissal.

arrest and false imprisonment); Count V (state law – malicious prosecution); and Count VI (state constitutional claims) fail as a matter of law because, per Poray, all criminal charges were supported by probable cause. Defendant Poray also challenges plaintiff's state law claims on various other grounds.[3] The court will address these issues in turn.

### 1. Probable Cause

Count I alleges that Defendant Poray and the Doe supervisors violated Section 1983 by engaging in malicious prosecution of the plaintiff. That claim is derived from the Fourth Amendment right to be free from unreasonable seizures.[4] Zimmerman v. Corbett, 873 F.3d 414, 418 (3d Cir. 2017) (malicious prosecution claim); see also Couden v. Duffy, 446 F.3d 483, 494 (3d Cir. 2006) (citations omitted) (explaining that a seizure is reasonable for Fourth Amendment purposes when supported by warrant or probable cause). Count V of plaintiff's complaint asserts the equivalent state law claim. See e.g. Kelley v. Local Union

---

[3] Plaintiff concedes that there is no private right to seek damages for Pennsylvania constitutional claims. (Doc. 11, Pl. Br. in Opp. at 12). Accordingly, the court will dismiss Count VI of the complaint with prejudice without any additional discussion.

[4] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002). To establish a claim under Section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under color of state law. Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998). Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law. Id.

249, 544 A.2d 940, 941 (Pa. 1988); Miller v. Pennsylvania R.R. Co., 89 A.2d 809, 811 (Pa. 1952).

To prevail on her Section 1983 and state law malicious prosecution claims, the plaintiff must demonstrate, among other things, that the proceeding was initiated without probable cause. See Est. of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003) (Section 1983 malicious prosecution claim); Kelley, 544 A.2d at 941 (state law malicious prosecution claim). The same goes for the claims asserted in Count V for false arrest and false imprisonment in violation of state law. To prevail on her state law false arrest and false imprisonment claims, the plaintiff must similarly demonstrate "unlawfulness," i.e., that the arresting officer lacked probable cause. See Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (citation omitted).

"The probable cause inquiry is 'commonsense,' 'practical,' and 'nontechnical' and it is based on the totality of the circumstances and is judged by the standard of 'reasonable and prudent men.'" United States v. Donahue, 764 F.3d 293, 300 (3d Cir. 2014) (quoting Illinois v. Gates, 462 U.S. 213, 230–31 (1983)). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 482

7

(3d Cir. 1995). The existence of probable cause is generally a factual issue in a Section 1983 action. Groman v. Twp. of Manalapan, 47 F.3d 628, 635 (3d Cir. 1995). But a court "may conclude in the appropriate case, however, that probable cause did exist as a matter of law if the evidence, viewed most favorably to [the plaintiff], reasonably would not support a contrary factual finding." Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997) (footnote omitted).

In this matter, plaintiff attached Defendant Poray's police criminal complaint to her pleading and this document includes Defendant Poray's affidavit of probable cause sworn to a state magisterial district court judge.[5] (Doc. 1-1). Defendant's affidavit of probable cause provides:

> In the month of March, 2022 your affiant was contacted by Plains Twp Police Department in reference to a theft of a controlled substance at the Timber Ridge nursing facility, located at 1555 East End Blvd. Wilkes Barre, PA 18705.
>
> On March 18, 2022 your affiant met with Director of Nursing, Ed Cienciva and Nursing Administrator, Melinda Bohan. Cienciva and Bohan explained to your affiant that on March 10, 2022 thirty (30) tablets of Oxycodone 5mg, along with the medication log associated with the Oxycodone went missing from their facility.

---

[5] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Ben. Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

It was confirmed through pharmacy records that the thirty (30) tablets of Oxycodone 5mg were dispensed, in the form of a blister pack, to patient N.H. (DOB: 8/4/34) on February 24, 2022.

Once the blister pack was dispensed to the facility it is then placed onto the appropriate medication cart. At this time a medication log is also created to associate with each medication and these logs are kept at each medication cart.

Through the medication administration record (MAR) it was further confirmed that N.H. was not provided with any of this medication from February 24, 2022 through March 10, 2022.

At the beginning and end of every shift each nurse is required to do a medication count with a second nurse present. The medication count in which each nurse partakes in is determined by which medication cart they will be assigned to or had been assigned to while on shift. The medication count is done at each cart utilizing all medication logs that are assigned to that cart.

Furthermore, the medication count is done for the cart those specifics nurses had been assigned to during their shift or will be assigned to coming onto their shift. Along with the medication count each nurse is given the key to the specific cart they are assigned to while working their shift. The nurse is responsible for that key and that cart throughout their shift and the key given to that nurse is the only way into each specific cart.

During each shift a supervising registered nurse comes to each cart and does a master log count to insure the counts at each medication cart are correct. The master log includes all information contained on each medication log along with all dispenses from the pharmacy.

On the change of shift at 7:00AM on March 10, 2022 Licensed Practical Nurse (LPN), Jonathan Warke, who was the LPN coming off of shift, confirmed doing a medication count with LPN, Shannon Curry. During an interview with your affiant, Warke confirmed that all medication was accounted for along with all medication logs.

Curry further corroborated Warke's confirmation through a statement she made to the nursing facility that the medication count was correct the morning of March 10, 2022.

In addition to Warke confirming the count that morning his supervisor, Shannon Jones also confirmed that during Warke's shift a master log count was done by herself in which the medication counts were all correct and all medication logs were present.

On March 10, 2022 Curry worked from 7:00AM through 11:00PM. On this same date at 11:00PM Supervising Registered Nurse, Cail Bauman did the medication count for Curry's medication cart and found the thirty (30) tablets of Oxycodone 5mg, along with the log associated with aforementioned drug were missing.

Furthermore, from February 24, 2022 through the morning of March 10, 2022 the thirty (30) tablets had been accounted for in each nurse's medication count.

Id. at p. 5–6.

Plaintiff alleges that Defendant Poray obtained a warrant for her arrest based on this information. (See Doc. 1, Compl. ¶ 12). A state magisterial district court judge considered Defendant Poray's affidavit, determined the defendant had probable cause, and issued an arrest warrant. Consequently, because

10

plaintiff attached this articulation of Defendant Poray's probable cause to the complaint, Poray moves to dismiss the claims for malicious prosecution, false arrest, and false imprisonment.

An arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest and malicious prosecution claims. See Andrews v. Scuilli, 853 F.3d 690, 697 (3d Cir. 2017); Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000). But, in these circumstances, a plaintiff must demonstrate that "(1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.' " Wilson, 212 F.3d at 786–87 (citing Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997)).

Plaintiff does not allege in her complaint that Defendant Poray knowingly or recklessly misrepresented or withheld information from the state magisterial district court judge in the affidavit of probable cause. Instead, in opposition to the motion to dismiss, plaintiff attaches a transcript from her preliminary hearing where a different state magisterial district court judge dismissed the charges after several witnesses testified on behalf of the Commonwealth.

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec.

11

Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). A court may also properly consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp., 998 F.2d at 1196 (3d Cir. 1993). Plaintiff did not attach her preliminary hearing transcript to her complaint or make any factual allegations based on what she learned at her hearing. Consequently, the court will not entertain any arguments related to this transcript on the issue of whether plaintiff can plausibly allege a lack of probable cause. See Commonwealth ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)(citation omitted) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Plaintiff's complaint and exhibits thus stand for the proposition that she would have been the only LPN to have keys to the medication cart containing the patient's oxycodone that went missing and were presumed to be stolen. Thus, plaintiff's Section 1983 and state law malicious prosecution claims are subject to dismissal under Rule 12(b)(6). So are her state law claims for false arrest and false imprisonment.

But plaintiff also requests leave to amend her civil rights complaint. (Doc. 11, Pl. Br. in Opp. at 10). "[I]n civil rights cases[,] district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher-

Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir.

2007).  Defendant Poray counters that amendment would be futile. (Doc. 12, Def.

Reply Br. at 7).  In assessing futility, the district court applies the same standard

of legal sufficiency as applies under Rule 12(b)(6). In re Burlington Coat Factory

Sec. Litig., 114 F.3d at 1434 (citation omitted).

Despite her reference to the preliminary hearing transcript in her brief in

opposition and her request to amend, plaintiff has not attached a proposed

amended complaint with any additional allegations.  This complicates the

requisite futility analysis. See Commonwealth ex rel. Zimmerman, 836 F.2d at

181 (3d Cir. 1988) ("It is one thing to set forth theories in a brief; it is quite

another to make proper allegations in a complaint.").  In her opposition brief,

plaintiff argues that, at her preliminary hearing, the Commonwealth's attorney

only called one of the individuals from Timber Ridge referenced in the affidavit of

probable cause.  (Doc. 11 at 4).  Instead, the Commonwealth called two other

Timber Ridge employees not mentioned in the affidavit, who, per plaintiff,

provided testimony that was damaging to the Commonwealth's case.

Furthermore, one witness's testimony "paint[ed] a different picture" about the

security of medication carts than what was detailed in the affidavit of probable

cause. Id. at 7.

13

Defendant Poray also argues that the preliminary hearing occurred after the filing of the criminal complaint, therefore, it would have been impossible for her to know something prior to its occurrence. But, as indicated above, plaintiff seeks leave to provide fuller factual allegations and can reference hearing testimony, which may call Defendant Poray's affidavit into question in a manner where the law recognizes recovery. Thus, given this possibility, the court cannot conclude that amendment would be futile. Defendant Poray's motion to dismiss will be granted, but plaintiff will be permitted to amend.

## 2. Sovereign Immunity

Plaintiff's complaint asserts several state law causes of action in Count IV (false arrest and false imprisonment); Count V (malicious prosecution); Count VI (state constitutional violations); and Count VII (IIED). Defendant Poray argues that she is entitled to sovereign immunity on these state law claims. (Doc. 9, Def. Br. in Supp at 11-12). In response, plaintiff argues, without support, that neither Eleventh Amendment immunity, nor sovereign immunity applies. (Doc. 10, Pl. Br. in Opp. at 10–11). She also conflates her federal claims with her state claims. Id. The court agrees with defendant and will briefly address this issue.

The Eleventh Amendment prevents federal courts from entertaining lawsuits brought against a state. U.S. CONST. AMEND. XI; Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-68 (1997); Hans v. Louisiana, 134 U.S. 1, 10

14

(1890). This immunity from private suit extends to state agencies as well as state officials acting in their official capacity because such lawsuits are essentially civil actions against the state itself. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). As for the Section 1983 claim against Defendant Poray, plaintiff can proceed against the defendant in her individual capacity even if the actions subject to this lawsuit were part of her official duties. See Hafer v. Melo, 502 U.S. 21, 31 (1991).

As for the state law claims, the Pennsylvania General Assembly has declared that state employees acting within the scope of their duties are entitled to sovereign immunity except where immunity has specifically been waived. 1 PA. CONS. STAT. § 2310. Generally, sovereign immunity is only waived for state law negligence claims arising under facts confined to ten specific, defined categories.[6] See 42 Pa. C.S. § 8522(b). Plaintiff's claims for malicious prosecution, false arrest, false imprisonment, and IIED are intentional torts. La Frankie v. Miklich, 618 A.2d 1145, 1147 (Pa. Commw. Ct. 1992); Gray v. Huntzinger, 147 A.3d 924, 927 (Pa. Super. Ct. 2016). "[S]tate employees do not lose their sovereign immunity protection for intentional torts committed within the

---

[6] Those categories of claims are: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and sinkholes; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse. See 42 Pa. C.S. § 8522(b).

15

scope of their employment." Kull v. Guisse, 81 A.3d 148, 157 (Pa. Commw. Ct. 2013) (citing Williams v. Stickman, 917 A.2d 915 (Pa. Commw. Ct. 2007); La Frankie, supra). Moreover, "conduct constituting a crime, actual fraud, actual malice or willful misconduct is considered to be outside the employee's scope of employment for immunity purposes." Id. at 154 (citation omitted).

Plaintiff's complaint concerns Defendant Poray's conduct in her role as a narcotics agent in the Pennsylvania Office of Attorney General.  (Doc. 1, Compl. ¶¶ 1, 10–11, 13, 28, 64, 67, 73).  There are no facts alleged that Defendant Poray acted outside the scope of her employment.  Similarly, plaintiff's complaint, even when read as a whole, does not advance facts alleging that Defendant Poray acted with malice or engaged in willful misconduct.  Consequently, the state law claims against Defendant Poray will be dismissed with prejudice. Unlike with her Section 1983 claim, plaintiff cannot plead facts overcoming sovereign immunity.[7]

---

[7] Defendant Poray separately moves to dismiss the IIED claim in plaintiff's complaint as not sufficiently alleging extreme and outrageous conduct.  Liability on an IIED claim "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Reedy v. Evanson, 615 F.3d 197, 231–32 (3d Cir. 2010)(quoting Field v. Phila. Elec. Co., 565 A.2d 1170, 1184 (Pa. Super. Ct. 1989)). Regarding this element, Pennsylvania law directs that "it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." Swisher v. Pitz, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005). Conduct found to be outrageous includes: "(1) killing the plaintiffs son with an automobile and then burying the body, rather than reporting the incident to the police; (2) intentionally fabricating documents that led to the plaintiff's arrest for murder; and (3) knowingly releasing to the press false medical records diagnosing the plaintiff with a fatal disease." Dull v. W.

### 3. Leave to Amend

Since there are no viable claims against Defendant Poray as alleged in the complaint, Poray's motion to dismiss will be granted.  Consequently, there are no viable claims asserted against the John Doe supervisors.  This entire action is thus subject to dismissal.  As indicated above, however, the court will provide plaintiff with leave to amend her Section 1983 claims only. Plaintiff will be provided with 20 days to file an amended complaint.

### Conclusion

For the reasons set forth above, Defendant Poray's motion to dismiss will be granted, but plaintiff will be provided 20 days to file an amended complaint regarding her Section 1983 claims.  An appropriate order follows.

Date: 6/13/25

JUDGE JULIA K. MUNLEY
United States District Court

---

Manchester Twp. Police Dep't, 604 F. Supp. 2d 739, 756 (M.D. Pa. 2009)(citing Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998)(further citations omitted)).  Assuming the allegations in plaintiff's complaint to be true, the conduct of Defendant Poray is not sufficiently extreme and outrageous to support an IIED claim under Pennsylvania law. Accordingly, plaintiff's IIED claim is also subject to dismissal on these grounds.